OPINION OF THE COURT
Alexander, J.
The only question involved on this appeal concerns the constitutionality of the Laws of 1984 (ch 986), passed by the State Senate and Assembly on December 6, 1984, which, inter alla, increased the salaries of the members of the Legislature for the 1985-1986 term. The appeal is taken pursuant to CPLR 5601 (b) (2) directly from a judgment of Supreme Court, *267 Albany County, declaring that sections 18 and 19 of chapter 986 are not violative of NY Constitution, article III, § 6. The latter section provides that "[n]either the salary of any [legislator] nor any other allowance * * * may be increased or diminished during, and with respect to, the term for which he shall have been elected”.
On November 6, 1984, the voters of this State elected the members of the 1985-1986 Legislature. On December 6, 1984, the members of the 1983-1984 Legislature approved Senate Bill 10162, which was signed into law the following day by Governor Cuomo as the Laws of 1984 (ch 986). This enactment amended the Judiciary Law, the Legislative Law, the New York City Civil Court Act, the County Law, the Executive Law and the State Finance Law to raise the salaries of members of the Legislature, judges and justices of the unified court system, New York City housing judges, and certain District Attorneys and State officers. The effective date of sections 18 and 19 of the new statute, which deal with legislative salaries and allowances, was January 1, 1985, the commencement date of the 1985-1986 legislative term.
Plaintiffs, the Committee Against Legislative Pay Increases, by its treasurer Mark A. Dunlea, and Edward Robinson, a New York State resident and taxpayer, commenced this action seeking a declaration that sections 18 and 19 of chapter 986 are unconstitutional; an injunction against further distribution of funds under those sections; and restitution of funds already paid out thereunder. Specifically, plaintiffs contend that because 144 of those members of the 1983-1984 Legislature who voted in favor of increasing salaries for the 1985-1986 term had already been elected to that term, the enactment of sections 18 and 19 violated the constitutional proscription against raising a legislator’s salary "during, and with respect to, the term for which he shall have been elected”.
Special Term granted defendants’ motion for summary judgment, declaring that the legislators whose terms of office were to expire on December 31, 1984 were entitled to approve an increase in legislative salaries and allowances to take effect upon the commencement of the next legislative term, and that sections 18 and 19 were validly enacted. We now affirm.
"Our deliberations must begin with an awareness of the respect due the legislative branch, which finds articulation in the precept that 'as a matter of substantive law every legisla *268 tive enactment is deemed to be constitutional until its challengers have satisfied the courts to the contrary’ (Montgomery v Daniels, 38 NY2d 41, 54)” (New York Public Interest Research Group [NYPIRG] v Steingut, 40 NY2d 250, 257). In NYPIRG, we invalidated the then-prevalent practice by the Legislature of increasing legislator’s allowances on a year-by-year basis through annual budgetary appropriations. Because these allowances were appropriated during each term and were effective during the same term, it was clear that they violated the constitutional proscription against increasing a member’s allowance "during, and with respect to, the term for which he shall have been elected”. We also held, however, that "the Constitution lays no constraint on the authority of the Legislature by enactment of general law to make provision prospectively for allowances to be received by the officers and members of the two houses during a succeeding legislative term or terms” (New York Public Interest Research Group v Steingut, 40 NY2d, at p 261, supra [emphasis supplied]). The provisions of sections 18 and 19 raising salaries and allowances for members of the 1985-1986 Legislature are clearly prospective and thus do not violate NY Constitution, article III, § 6. That section does not prohibit one Legislature, subsequent to the elective designation of its successor body, from increasing the salaries of the next term’s members. Neither its language nor the intention of its drafters compel a contrary interpretation.
Until NY Constitution, article III, § 6 became effective in its present form on January 1, 1948, legislative salaries were fixed, primarily on a per diem basis, by the Constitution, and could be changed only by constitutional amendment. With the amendment of section 6, a legislator now "receivers] for his services a like annual salary, to be fixed by law” (NY Const, art III, § 6). The purpose of empowering the Legislature to determine its own compensation, "as is done in Congress”, was to avoid "repeating] the error of inflexibility” that had resulted from "fixing the compensation of legislators and legislative leaders in the Constitution, and thus fail[ing] to provide for changing conditions and circumstances” (New York State Joint Legislative Committee on Legislative Methods, Practice, Procedures and Expenditures, 1946 NY Legis Doc No. 31, at 170).
Until recent years, the Legislature was not normally in session during the period following the traditional November election, and thus it is unlikely that the drafters of section 6 *269 intended to bar the enactment of a salary change after an election, but before the newly elected members have begun their term. The language of section 6 bears this out. The phrase "and with respect to” in section 6 qualifies the preceding word "during”. The ban on increasing a member’s salary "during, and with respect to, the term for which he shall have been elected” simply prohibits a particular Legislature, during its term, from raising its salary with respect to that term. "Relative and qualifying words or clauses in a statute are to be applied to the words or phrases immediately preceding, and are not to be construed as extending to others more remote” (McKinney’s Cons Laws of NY, Book 1, Statutes § 254; see, Matter of Budd v Valentine, 283 NY 508).
Our interpretation of section 6 is consistent with other States’ interpretations of somewhat similar, as well as critically different, provisions dealing with this subject. For example, in Holcomb v State ex rel. Coxey (126 Ohio St 496, 186 NE 99), the court upheld an enactment diminishing the salary of a Mayor, which was passed after the Mayor had been elected but prior to his taking office, where the relevant statute prohibited a change in a public official’s salary "during the term for which he was elected” (id., 126 Ohio St, at p 498, 186 NE, at p 100; see also, Romano v Aten, 323 Mich 533, 35 NW2d 701). By contrast, several State Constitutions specifically bar salary changes for public officials "after election” (e.g., Del Const, art XV, § 4; Pa Const, art 3, § 27; Wyo Const, art 3, § 32). Similarly, other States prohibit legislative salary changes from taking effect until the commencement of the legislative term following the next general election after enactment of the statute (Cal Const, art 4, § 4; NJ Const, art 4, § 4, fl 8; Tenn Const, art 2, § 23).
We determine, therefore, that the judgment of Supreme Court, Albany County, should be affirmed.
Chief Judge Wachtler and Judges Jasen, Simons, Kaye and Titone concur; Judge Meyer taking no part.
Judgment affirmed, with costs.